UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHALMETTE MEDICAL CENTER, INC. ET AL | * | CIVIL ACTION |
| | * | |
| | * | NO. 08-4027 |
| | * | |
| U.S. DEPARTMENT OF HEALTH & | * | SECTION "L"(5) |
| HUMAN SERVICES | * | |

## ORDER & REASONS

Before the Court is the Motion for Summary Judgment filed by Chalmette Medical Center, Inc. and Pendleton Methodist Hospital, LLC (Rec. Doc. No. 17) and the Motion for Summary Judgment filed by U.S. Department of Health & Human Services (Rec. Doc. No. 19). The Court heard oral argument on the motions and took them under submission. For the following reasons, Plaintiffs' Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED.

## I.  BACKGROUND

This case arises out of an alleged conflict between a federal statute and a federal regulation regarding the Medicare reimbursement rates for psychiatric hospitals and units. Plaintiff hospitals entered into written agreements with the Secretary of the United States Department of Health and Human Services (hereinafter "Secretary") to provide hospital services to eligible individuals under the Medicare Act, pursuant to 42 U.S.C. §1395c. At the close of each fiscal year, Plaintiffs, as Medicare providers, would submit a cost report indicating the portion of their costs to be allocated to the Medicare program. In 1982, Congress imposed limits on cost reimbursement for certain hospitals and units, pursuant to the Tax Equity and Fiscal

1

Responsibility Act ("TEFRA"), Pub. L. No. 97-248. TEFRA sets forth a target amount based in part on the target amount for the preceding cost reporting period. If a hospital's operating costs exceeded the applicable target amount, the hospital was subject to a reduction in the amount of its reimbursement.

Between 1998 and 2002 Congress subjected reimbursement rates for certain hospitals and hospital units to a cap scheme under the Balanced Budget Act of 1997 ("BBA"), §4414, Pub. L. No. 105-33, 111 Stat. 251, 405 (codified as amended at 42 U.S.C. §1395ww(b)(3)(H)). Plaintiffs' cost reports were subject to this cap. The cap was set to expire at the conclusion of federal fiscal year ending September 30, 2002. After the cap scheme ended, the Centers for Medicare and Medicaid Services (hereinafter the "Agency") calculated the target amount for a hospital based on target amounts in previous cost reporting years. According to the Plaintiffs, because the Agency regulation bases the cap in part on previous capped target amounts, the Agency regulation impermissibly extends the cap scheme in perpetuity. Thus, the Plaintiffs assert that the regulation has caused the Plaintiffs to forfeit substantial sums otherwise owed to Plaintiffs for hospital services furnished to Medicare patients during fiscal years 2003 and 2004.[1]

Plaintiffs assert that the TEFRA regulations are in direct conflict with the governing statute, and seek an order declaring the regulatory provision, 42 C.F.R. § 413.40(c)(4)(i)-(iii)

---

[1] Plaintiffs assert that they timely appealed the notice of amount of program reimbursement to the Provider Reimbursement Review Board ("PRRB") pursuant to 42 U.S.C. § 1395oo. Within sixty days of receipt by the Plaintiffs of the PRRB's final decision determining that it lacked the authority to decide the legal question of whether the regulation, 42 C.F.R. § 413.40 was valid, Plaintiffs filed the instant complaint.

invalid, and that Plaintiffs' TEFRA limits should be calculated based on the hospital specific[2] pre-cap target amount as adjusted by an update factor, rather than the capped target as adjusted by an update factor. Plaintiffs seek damages, interest, costs and further relief as the Court deems appropriate.

The Defendant has answered and denies liability. The Defendant asserts that the regulations are consistent with the statute and that the Plaintiffs' reimbursement rate is appropriately calculated based in part on last year's target amount.

## II.     THE MOTIONS

Both Plaintiffs and the Defendant have filed motions for summary judgment. Plaintiffs seek summary judgment finding that the regulation promulgated by the Secretary is invalid because the regulation is in conflict with a Medicare statute. Plaintiffs assert that the regulation bases new target amounts on the target amounts of prior years, which include the years in which the target amounts were subject to a cap. Instead, Plaintiffs assert that they should be reimbursed based on the system that was in place before the cap existed. Plaintiffs argue that the regulation's definition of the term "target amount" conflicts with the statute's definition of the same term, because the Secretary's definition of "target amount" prevents the hospitals from reverting back to the pre-cap reimbursement methodology. As the statutory language was clear that the cap was subject to expiration in 2002, Plaintiffs urge the Court to find that the regulation is invalid. Plaintiffs further seek judgment finding that for the fiscal years at issue, Plaintiffs' TEFRA limits are to be calculated using each hospital's initial, hospital-specific, pre-cap target amount as updated through 2003 and 2004. Plaintiffs also argue that the Secretary's position is

---

[2]Derived from the actual costs the hospital incurred in the previous cost reporting period.

not entitled to *Chevron* deference because the regulation is inconsistent with the statute and in direct conflict with the statute's intent that the cap expire in 2002.

In response and in support of its motion for summary judgment, the Defendant takes the position that the Medicare statute clearly states that the target amount should be based upon target amounts of prior years, no matter how the previous target amount was determined. Defendant states that the hospital-specific calculations requested by the Plaintiffs are no longer available; the basis for the hospital-specific calculations existed in the now-expired cap scheme. Furthermore, if the Court finds that the statute is ambiguous, the Defendant contends that the Court should grant the Secretary's interpretation of the statute and its regulations *Chevron* deference. The Defendant does not dispute that the target amount is distinct from the cap amount. The Secretary's 1998 amendment to § 413.40(c)(4)(iii) clarified the meaning of "target amount" but did not redefine it or offer a substantive change in the regulation. The Defendant concedes that some hospitals' target amounts in prior years were limited to the maximum allowed under the cap provision, and thus, the cap scheme continues to have an indirect effect. The Defendant takes the position that its interpretation of the meaning of "target amount" is reasonable and consistent with the statute.

**III.     LAW & ANALYSIS**

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is

a fact which, under applicable law, may alter the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *Anderson*, 477 U.S. at 250; *TIG Ins. Co. v.. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig .*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). If the party moving for summary judgment demonstrates the absence of a genuine issue of material fact "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Boimedical Labs., Inc*., 61 F.3d 313, 315 (5th Cir. 1995).

By statute, judicial review of Medicare reimbursement disputes is governed by the standards in the Administrative Procedure Act. 42 U.S.C. §139500(f)(1). In *Chevron*, the United States Supreme Court set forth a two-step procedure to be used by the courts when reviewing an agency's construction of a statute that it administers. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). First, the Court must ask whether Congress has directly addressed the issue. It is well established in matters of statutory interpretation, that courts begin with the plain language and structure of the statutes. *Coserv Ltd. Liability Corp. v. Southwestern Bell Telephone Co.*, 350 F.3d 482, 486 (5th Cir. 2003). When the language is clear, the Court looks no further to divine the intent of the

legislature.

Second, when Congress has not directly spoken on an issue, an administrative agency's interpretation of the statute it administers is entitled to substantial deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As long as the federal regulation is based upon a permissible interpretation of the enabling statute, the federal regulation should be enforced. *Id.* But this deference is only appropriate when "it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001). Moreover, an agency's statements clarifying ambiguities in its own regulations are also entitled to a level of deference. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

*Chevron* deference is not accorded to every construction of a statute promulgated by an agency. Opinion letters, policy statements, agency manuals and enforcement guidelines lack the force of law and are not entitled to Chevron deference. *In re Union Pacific R.R. Employment Practices Litigation*, 479 F.3d 936, *943 (8th Cir. 2007). However, when applicable the Secretary's interpretation is entitled to deference from the court unless the court determines that the construction is "arbitrary, capricious, or manifestly contrary to the statute." *Tex. Coalition of Cities for Utility Issues v. F.C.C.*, 324 F.3d 802, 807 (5th Cir. 2003) (citations omitted).

The Plaintiffs contend that the Secretary's regulation conflicts with the Medicare statute. The following sections of the statute are at issue: 42 U.S.C. §1395ww(b)(3)(A) and (B), which define a target amount based in part on the previous year's target amount, and 42 U.S.C.

6

§1395 ww(b)(3)(H) which implemented the cap based on the 75th percentile of target amounts for fiscal years 1998 through 2002. Pursuant to 42 U.S.C. §1395ww(b)(3)(H), at the conclusion of fiscal year 2002, the cap on target amounts expired.

42 C.F.R. § 413.40(c)(4)(i)-(iii) is the federal regulation at issue. That regulation discusses how the target amount for a cost reporting period is determined. The first section, (i), indicates that for the first cost reporting period, the target amount is the hospital's net inpatient operating costs per case for the hospital's base period, increased by an update factor. The second section, (ii), states that the target amount for subsequent periods is the hospital's target amount for the previous year, increased by an update factor. Both of these sections state that they are subject to the third section. The third section, (iii), states that from 1997 through 2002, for a psychiatric hospital or unit, the target amount *is* the lower of either the hospital-specific target amount, or the 75th percentile of target amounts for the previous year for hospitals in the same class, subject to a percentage increase. The Plaintiff takes issue with this third section, and argues that this was an amendment that erroneously equated the target amount with the 75th percentile cap of target amounts for similar hospitals. Essentially, Plaintiffs assert that the target amount is distinct from the cap and should be hospital-specific.

The Court must now determine the appropriate calculation of the target amount after 2002, and whether it should be based on last year's target amount as applied (which, in this case, was capped), or the hospital-specific target amount that would have applied had the cap never been in force.

### A. Whether the Statute is "Silent" on this Issue

The parties agree that the statute is not silent on this issue. However, they disagree

7

as to what the statute says. The Court also finds that the language in the statute directly speaks to this issue.

Pursuant to 42 U.S.C. §1395ww(b)(3)(A), the target amount in the first year is defined as the allowable operating costs of an inpatient hospital services for that hospital for a 12-month reporting period. For subsequent years, the target amount is the target amount for the preceding 12-month cost-reporting period, increased by an applicable percentage rate.

Under 42 U.S.C. §1395ww(b)(3)(H), the cap was based on the 75th percentile of target amounts of hospitals within the same class. The statute states:

> (H)(i) In the case of a hospital or unit that is within a class of hospital described in clause (iv), for a cost reporting period beginning during fiscal years 1998 through 2002, the target amount for such a hospital or unit **may not exceed** the amount as updated up to or for such cost reporting period under clause (ii).
>
> (ii)(I) In the case of a hospital or unit that is within a class of hospital described in clause (iv), the Secretary shall estimate the 75th percentile of the target amounts for such hospitals within such class for cost reporting periods ending during fiscal year 1996, a adjusted under clause (iii).

(emphasis added).

During capped years, of the statute the target amount could not exceed the 75th percentile cap or the hospital-specific target amount. Thus, the term "target amount" was distinct from the "cap amount," as the target amount could be the "hospital-specific target amount" when not subject to a cap. Here, however, when the hospital-specific target amount exceeded the cap, the target amount became the cap amount. This result is dictated by the statute, which states that the target amount "may not exceed" the cap amount, in certain circumstances. Thus, as applied to Plaintiffs, pursuant to the unambiguous terms of the statute, the target amount in 2002 *was* the target amount actually applied based on the cap in 2002. The Defendant appropriately calculated

the target amount in subsequent years based in part on the target amount applied in the previous years. The Court's finding on this issue would normally conclude the analysis. However, the Court finds that even if the statute were silent, the Court would arrive at the same conclusion that the Defendant's calculation of the target amount is appropriate.

### B. Reasonableness of Agency Action

If the statute is silent as to the definition of "target amount," the Secretary's interpretation of the regulations implementing the statute is entitled to *Chevron* deference.

Two other federal courts have addressed this issue and have found the statute to be silent on this issue. In *Arkansas State Hospital v. Leavitt*, 2008 WL 4531714 (E.D. Ark. Oct. 8, 2008) found that 42 U.S.C. §1395ww(b)(3)(H) is unclear as to the factors to be taken into account in calculating target amounts after 2002. In *Hardy Wilson Memorial Hospital et al v. Leavitt*, the court stated, "What Congress did not provide, however, were instructions for CMS to follow in the event of a delay between expiration of the BBA's cap provisions and implementation of the new [Prospective Payment System]." Civ. Action No. 5:08cv4-DCB-JMR (S.D. Miss. Mar. 20, 2009). After finding that the statute is silent on this issue, the courts concluded that the Secretary's construction of target amounts immediately after 2002, based on the capped target amount for the previous year, is reasonable. The courts both granted summary judgment in favor of the defendant, upholding the Secretary's construction of the statute.

The Plaintiffs argue that the Secretary is not entitled to *Chevron* deference as the Defendant's position is inconsistent with the statute. Plaintiffs take the position that the statute did not redefine the target amount, which was still hospital specific, and the Defendant erroneously equated the target amount with the cap amount.

9

The Court finds that the Defendant's amended regulation is consistent with the terms of the statute. Whereas 42 U.S.C. §1395ww(b)(3)(H) states that the target amount "*may not exceed*" the cap, in 1998 the Secretary promulgated an amended regulation that states "the target amount *is* the lower of" the cap or the hospital-specific target amount. When the Defendant amended the regulation to state that the target amount is the lower of the 75th percentile cap or the hospital-specific target amount, Defendant did not institute a substantive change in the definition of target amount. The terms "is the lower of" and "may not exceed," as used here, were functionally the same and meant that the target amount for Plaintiffs was limited to the 75th percentile cap in 2002.

The Court finds that the Secretary's interpretation of the term "target amount" is reasonable. The base year target amount was hospital specific. In subsequent years, the target amount was based on the target amount for previous years. The cap was instituted to achieve federal budget savings.[3] During the capped years, for providers whose hospital-specific costs exceeded the 75th percentile cap amount, such as Plaintiffs, the target amount was the cap amount. Thus, since target amounts after 2002 are indisputably supposed to be based on the target amount of prior years, the new target amounts are affected by the fact that the cap existed and limited prior target amounts. This is a logical interpretation of target amounts after 2002, which is compatible with the statute, notwithstanding the fact that the cap expired in 2002. If Congress wanted the target amount to be the hospital-specific target amount after 2002, rather than the actual, applied target amount (which, in Plaintiffs' case, was capped), Congress could

---

[3]*See* Rehabilitation and Long-Term Care Hospital Payments: Hearing before the Subcomm. on Health of the H. Comm. on Ways and Means, 105th Cong. at 60 (1997), Rec. Doc. No. 17-3.

have done so. Instead, the statute continued to direct that the target amount should be based upon last year's target amount, modified by an update factor. Thus, consistent with *Hardy Wilson* and *Arkansas State Hospital*, the Court shall deny Plaintiffs' motion and grant Defendant's motion, finding that the Secretary's construction is consistent with the statute and reasonable.

## IV.     CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion for Summary Judgment filed by Chalmette Medical Center, Inc., Pendleton Methodist Hospital, LLC (Rec. Doc. No. 17) is hereby DENIED and Motion for Summary Judgment filed by U.S. Department of Health & Human Services (Rec. Doc. No. 19) is hereby GRANTED. The Plaintiffs' claims are hereby DISMISSED, with costs and with prejudice.

New Orleans, Louisiana this 10th day of August, 2009.

_____
UNITED STATES
DISTRICT JUDGE